## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Criminal No. 20-CR-30048** |
| **RAFAEL MERCADO BERRIOS,** | |
| **Defendant.** | |

## GOVERNMENT'S COMBINED MOTION IN LIMINE, AND NOTICE OF INTENT TO USE EVIDENCE UNDER FEDERAL RULE OF <u>EVIDENCE 404(b)</u>

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby files this combined motion in limine and notice of intent to use evidence pursuant to Federal Rules of Evidence 404(b). Further, given the impending trial date, this brief addresses certain anticipated defenses and evidence that the defendant may attempt to raise or introduce at trial, and why they are legally meritless or should be excluded. Given the comprehensiveness of these motions, the government submits this combined response, and offers the following table of contents:

INTRODUCTION ................................................................... 4

FACTUAL BACKGROUND ................................................... 4

   I. Communication and Arrest ............................................ 5

   II. Post Arrest Interview ................................................12

   III. Search of the Defendant's Phone ..............................13

   IV. Search of the Defendant's Computer ........................15

   V. Witnesses and Charges ............................................16

DISCUSSION ...................................................................17

   I. Notice of Intent To Introduce Evidence Of Other Acts Under FRE 404(b)...................................................................17

     A. Evidence Admissible Under FRE 404(b)...................18

MOTION TO EXCLUDE ANTICIPATED DEFENSES ...........................23

   I. Entrapment................................................................23

   II. The "Fantasy" Defense..............................................28

   III. The Defendant's Character .......................................32

     A. No Lack Of Proclivity For Child Sex Abuse Evidence................32

     B. Unrelated Good Acts By The Defendant....................36

IV. The Defendant's Intent ...............................................................36

V. The Defendant's Mental Health Or Capacity...............................40

VI. The Consent Of The "Child" .......................................................42

MOTION TO EXCLUDE EVIDENCE REGARDING THE CHS'S
IDENTITY.........................................................................................45

MOTION TO EXCLUDE ARGUMENT OR EVIDENCE DESIGNED TO
ELICIT JURY NULLIFICATION ..........................................................50

I. Penalties Faced by the Defendant if Convicted ............................51

II. Government's Motivations for Investigating and Prosecuting the

Case....................................................................................................52

III. Allegations of Outrageous Government Conduct .......................53

MOTION TO PRECLUDE DISCOVERY REQUESTS OR COMMENTARY
IN THE PRESENCE OF THE JURY ....................................................54

CONCLUSION ..................................................................................55

# INTRODUCTION

On September 17, 2020, the grand jury sitting in the Central District of Illinois, returned a two-count indictment against the defendant. Count one charged the defendant with Attempted Enticement of a Minor in violation of 18 U.S.C. 2422(b); and Count two charged the defendant with Use of Interstate Facilities to Attempt to Transmit Information About a Minor in violation of 18 U.S.C. 2425. The defendant has notified the Court of his intention to seek a trial in this matter, and the Court has set the matter for a final pre-trial conference on May 24, 2021 at 3:00 p.m. and trial starting on June 2, 2021 at 9:00 a.m.

## FACTUAL BACKGROUND

Between August 24, 2020 and August 28, 2020, FBI Special Agent Michael Carter, acting in an authorized undercover capacity, was operating on a popular online dating/chatting application, MeetMe. The profile being operated was named "Alexis" and it displayed an age of eighteen (18) years old. The profile displayed a picture of a female wearing a black shirt and glasses with her tongue sticking out taking a picture of herself, which had been

provided by an FBI confidential human source (CHS).[1] On August 24, 2020, a profile named "Jose Mer," later identified as the defendant, initiated a conversation with SA Carter's FBI Online Covert Employee (OCE) "Alexis" profile. The subject's profile had a picture of an adult male with black hair, a goatee, and sunglasses. The profile information stated he was 41 years old, lived in Springfield, Illinois, was 6'1", Latino/Hispanic, and had a listed body type of "A few extra pounds." SA Carter responded to the message, and a sexually explicit conversation ensued.

## I.    Communication and Arrest

The following is an excerpt of that conversation:

> Jose: U got more pictures?
> OCE: Ya. Lol.
> Jose: I ask because normally 1 poc on an account means its fake.
> Jose: pic*
> OCE: What's ur phone number. This app kills my phone
> Jose profile provides phone number ending in 3565
> Jose: Whats yours so I know its u...at least last 4 digits
> OCE: 7688
> Jose: Ok message me now...whenever u want
> Jose: Sorry it was (sends another phone number ending in 3656)
> Jose: Or just give me your full number and I can message you. Would love to see

---

[1] This confidential human source is an adult female, has no criminal history, and is being financially compensated for her time by law enforcement.

some more pics of you ... make aure your real <emoji smile face>
OCE: I texted u.
OCE: Lol.
OCE profile sends full phone number ending in 7688
Jose: Just messaged u

The conversation then moved to text messages between the Alexis profile and the defendant. According to a download of the defendant's phone his messages were sent and received using a messaging application named TextNow, which is an internet-based messaging application. The following is an excerpt of that continued conversation:

Jose: Hi there...is this Alexis from Meetme?
OCE: Yes it is. Lol. Is this Jose
Jose: So...u got more pics hun?
OCE: Is this Jose?
Jose: Yes it is
Jose: Yes
OCE: Sends picture of a female in a yellow shirt and jeans
Jose: Nice, so u are 18 and live in Champaign
OCE: Well I'm not technically 18...lol
OCE: I'm almost 16
Jose: Whatcha mean?
Jose: Oh wow
Jose: your young
OCE: Ya. Very mature though. I'm not into guys my age
Jose: You got a great body though for only being 16
Jose: Cool...yea I am not into gals my age cause in my head Im still 18 and always will be.
OCE: 15. Lol. And thanks
Jose: Im a kid at heart and I game and smoke weed and stay up late and love going places to just have fun and enjoy life.

Jose: Tell me more about you
OCE: I'm 15 and I hate school. Lol. Like to hang out with friends.
OCE: I'm house sitting for my grandma this weekend in Springfield

The conversation continued during which time the parties discussed that the OCE minor profile was house sitting her grandmother's house during the weekend in Springfield. The following excerpt took place shortly thereafter:

OCE: I don't think we are talking about the same type of fun
Jose: Ok good...I wasn't sure
Jose: if you meant fun fun or just fun
Jose: So I love to eat you know what
Jose: I also have done many positions
OCE: That's hot
Jose: I am very active and energetic
Jose: I really do love eating
OCE: I have never had that before
Jose: And licking and caressing
Jose: Omg...you would love it
Jose: Especially how I do it
Jose: I really enjoy it
OCE: Really? My friend told me it feels good
Jose: I can also play some domination
Jose: It feels really good
Jose: If done right
Jose: and you can have multiple you know whats
Jose: If done right
OCE: Why are u talking like that. Lol
Jose: Just being careful
OCE: What do you mean
Jose: Your age
OCE: Ok...but why are u talking like that...lol
Jose: You have heard of people getting in trouble right?

Jose: Didnt want to say the words
Jose: Unless you want me to
Jose: You give me consent
OCE: Ya I mean I get that, but what does not saying the words have to do with it lol
OCE: For sure.
Jose: Lol...dont know...was feeling naughty and wass trying to tone it down a bit since you have not done much
OCE: I wanna know what I'm in for though. Lol
Jose: So you give me consent to talk straight?...u say yes and I will say all
OCE: Yes definately (sic)
Jose: Ok then I would love to eat your tight little pussy and lick you all
Jose: That better?
OCE: O wow. Now were talking. Lol
Jose: Would love to restrain your arms on the bed and pass a cold ice along your body while you are blindfolded
Jose: Would live (sic) to spank you and have you call me daddy
OCE: I def have never done anything like that. Lol. Sounds hot though
Jose: Would do 69 and from behind and you riding me
Jose: You would love getting it from behind
Jose: I would kiss your buttcheeks and bite them
OCE: My best friend said from behind is her favorite
Jose: From behind is good for you and also riding me while on the couch...that one gets me real deep inside you
OCE: Omg that sounds amazing
OCE: Just be easy on me at first. Lol
Jose: Can u give me a preview of what I would be eating? Or is that too much?
Jose: I am gentle if need be
OCE: I dont wanna do nudes but I'll send u a little something. Lol
Jose: I wouldn't just ram it in...I would ease it in
Jose: A little something works
...
Jose: And those hips...I would love to grab you by them and pull you close tk (sic) me

Jose: Are u playing with yourself right now?

Jose: Omg cant wait to have my lips and tongue eating your nice little pussy

OCE: I'm sitting beside my grandma. Lol. That's so hot though

Jose: I bet your all wet too

OCE: Maybe a little. Lol

Jose: So you have to wait till the weekend to have fun?...darn thats 4 more days away

Jose: Mmmm...yummy

...

Jose: I can't wait to meet you either...wish I could meet you tomorrow

Jose: I just never ever though I would find skmeone (sic) like you

Jose: Would love to just massage your whole body

Jose: And lick your virgin pussy as much as I csn (sic) before I take your virginity

Jose: I will toyally (sic) eat it after too...I just want to savor it before we make you a woman

The conversation between the defendant and the OCE minor profile continued with both casual and sexual discussion. The following excerpt occurred the next day:

Jose: Sweet...yeah I will bring some goodies with me

OCE: Like what?

Jose: Some drinks...some weed and some candles and a blindfold...I have a whole week to think of other stuff to add to that list...

...

Jose: Your gonna love smoking weed...and it will make your first time having sex an amazing experience because weed heightens everything you do. Especially if your new to it.

...

   Later in the conversation:

Jose sends picture of a picture of a rabbit licking an ice cream cone

Jose: Do you like being submissive?
OCE: Lol. I don't know honestly. I'm open to try
Jose: Do u know what it means?
OCE: I think so.
Jose: Tell me what u think a submissive is and I will tell u if your kinda right or not.
OCE: Kinda like making me do stuff for u. Lol
Jose: Here is the definition for ya…and it can be pretty kinky if done right.
Jose: They are not a slave; their desire is simply to please their partner. The traits and roles of the submissive include: Prepared to please their partner's wants and needs. Accepts being controlled. Puts the needs of their partner above everything else.

On August 27, 2020, the defendant and a confidential human source (CHS) acting at the direction of law enforcement further engaged in a recorded cellular telephone call. During the conversation the defendant stated that he did not need to wear a condom because he could not get the female pregnant. The conversations continued over the next few days. During those conversations the defendant agreed to bring marijuana, white claw, and lubricant with him to meet the fifteen-year-old female. Specifically, the following conversation took place regarding meeting and having sexual intercourse:

Jose: So … want to maker sure … do u want me to bring condoms or no? I am clean and
I cant get u pregnant.. .. so you would get the full pleasure of your first time if you dont

use it.. ... I will though if you want me to.
OCE: No u dont have to if there is no way I can get pregnant. That's all I was
worried about. I trust u dont have a disease or something. Lol
OCE: But u still bring lube
Jose: Lube? ... sure. Why though?
OCE: my bf told me to use it on my first time ... she said it would help it not hurt. Do
u think we need it?
OCE: Bf is best friend not boy friend. Lol
Jose: Lol...ok I will bring it just in case we need it.
OCE: Ok. I just thought it might help it hurt less but I trust u
Jose: Ok thank you baby
Jose: Oh man ... talking about this is making me horny .. .lol

On August 28, 2020, the defendant and the OCE profile agreed on a time and place to meet and the defendant requested and received the OCE minor profile's address. The OCE maintained contact with the defendant prior to his arrival at the meet location. The defendant then arrived at the time and place agreed to by the OCE and the defendant and was taken into custody. At the time of his arrest, law enforcement located suspected marijuana, White Claw alcoholic beverages, and sexual lubricant in the defendant's vehicle. Agents also located the defendant's cellular telephone a Samsung Galaxy Note 8 device, IMEI 358503083551979.

## II.    Post Arrest Interview

Upon his arrest the defendant was read his Miranda warnings and was given the opportunity to speak to law enforcement. The defendant declined to speak to law enforcement. After being told that he would be taken to jail, the defendant became highly emotional and was asked by agents if he wanted medical assistance. The defendant was then observed to clinch his hands and hit his chest before falling to the ground. An ambulance was requested, and the defendant was transported to HSHS St. John's Hospital (HSHS).  Agents were then notified by hospital personnel that the defendant was requesting to speak to agents after having initially declined to do so. Law enforcement met with the defendant at HSHS, whereby the defendant advised that he wished to speak to agents even though he had previously declined. He was again read his Miranda warnings and then agreed to speak to law enforcement. He also consented to a search of his cellular telephone and a video camera located in his vehicle.

During the interview, the defendant acknowledged that the Alexis profile was for a minor, but claimed he did not intend to have sex with her. He also claimed that he had told his friends and a co-

worker, Paul Ainscough,[2] that he intended to meet her and "save her." He explained that he intended to tell her how dangerous it was to meet individuals online, and that his girlfriend had been raped in a similar situation. The defendant further claimed not to believe it was real and that it was all just talk. The defendant stated he thought the individual he was speaking to was a bot until today. He also acknowledged that he asked her if she was law enforcement, and did so because you are supposed to get the correct answer.

## III.  Search of the Defendant's Phone

During a search of the defendant's cellular telephone, agents located the messages between the defendant and the OCE minor profile, Alexis, in a web-based chatting application known as TextNow.  Agents further located messages in the defendant's Facebook messenger application in which he asked at least two other individuals if they would lie to his girlfriend and tell her that he was playing cards with friends on the night that he was to meet the OCE minor profile. He further told them that he just needed to

---

[2] FBI Agents spoke to Mr. Ainscough, who stated he was not told by the defendant that he was going to save someone, but instead stated the defendant told him he was going to meet a girl on the night he was arrested. Mr. Ainscough even asked about the relationship between the defendant and his girlfriend because he believed the defendant was meeting someone for a date.

get away from his girlfriend for a bit. Agents also found messages between the defendant and April Smith, the defendant's girlfriend, in which the defendant gave the address he received from the minor profile approximately a half hour before, and told Smith that he is "gonna head over there now to play cards." The "there" being the address of the meet location.

Law enforcement also noticed numerous conversations between the defendant and individuals who appeared to be women in which the defendant agreed upon a price for sexual activities and then it appeared that based upon the context of the messages that they had in fact engaged in sexual intercourse. One of these individuals, a girl by the name of Haley (last name unknown) stated that she was seventeen years old. Again, after agreeing upon a price between the context of the following text messages suggested that the two engaged in sexual intercourse. Law enforcement has been able to confirm the identity of the minor, and have confirmed that she indeed was a minor at the time that she lived with and engaged in a sexual relationship with the defendant.

A search of the defendant's messages on the online chat application MeetMe also revealed a further contact with another law

enforcement OCE profile. That account, similar to the Alexis profile, was for a young looking female with a listed age of eighteen. It should be noted that an individual cannot create a profile on MeetMe without putting an age of at least eighteen years old.

## IV.  Search of the Defendant's Computer

On April 2, 2021, federal agents interviewed April Smith, the defendant's former girlfriend. During that interview, Smith stated that she had been contacted by the defendant after his arrest. She stated that the defendant asked her to delete images from his computer. Smith further stated that the images he asked her to delete appeared to her to be child pornography, and that they looked like images of a fifteen-year-old female.  Smith claimed the images were of the minor's genitals. Finally, Smith stated that she deleted them from the defendant's computer, that she has used the computer, knew all of the passwords, and had it in her possession. On April 18, 2021, agents obtained a search warrant.

A search of the defendant's computer did not locate images of child pornography but did reveal evidence that his computer had software installed that cleaned the computer of deleted items. It is believed any images that were deleted by Smith would not be found

due to the nature of the computer and the cleaning software. Agents were able to locate, because they had not been completely deleted, the images the OCE had sent of the CHS. The defendant had downloaded the images from the MeetMe application onto his computer, had kept them on his computer for a little over an hour, and had then placed them into his recycling bin.

## V.     Witnesses and Charges

The Government anticipates calling several law enforcement witnesses including FBI Special Agents Michael Carter, Anthony Wright, and Greggory Roth to testify regarding the chats with the defendant, his arrest and interview that followed, and an expert witness, FBI Special Agent Aaron Spivak, to explain to the jury how undercover operations such as this one are handled, why agents engage in the type of conversations that they do, and the purpose and procedures of a child enticement sting operation.

The defendant is charged with attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b). R. 11. Under § 2422(b), the government must prove that the defendant knowingly attempted to persuade, induce, entice or coerce an individual believed to be under the age of eighteen to engage in sexual activity. *See* Seventh

Circuit Pattern Criminal Jury Instructions § 2422(b). Through these means of communication, the defendant attempted to persuade, induce, and entice the OCE to engage in sexual activity. The defendant is further charged with use of interstate facilities to attempt to transmit information about a minor in violation of 18 U.S.C. § 2425.

## DISCUSSION

## I. Notice of Intent To Introduce Evidence Of Other Acts Under FRE 404(b)

The government hereby provides notice to the Defendant of its intent to introduce evidence at trial, pursuant to 404(b), of the Defendant's other acts in order to prove his motive, opportunity, preparation, plan, intent, knowledge, identity, and absence of mistake or accident in reference to the offenses charged in the indictment. Specifically, the government intends to use in rebuttal facts regarding communication and a sexual relationship between the defendant and a seventeen year old, as well as the defendant's possession of child pornography and his request to his ex-girlfriend that such evidence be deleted from a computer.

## A. Evidence Admissible Under FRE 404(b)

FRE 404(b) governs the admission of other crimes, wrongs, or acts and reads, in pertinent part, as follows:

> (b) Other Crimes, Wrongs, or Acts – Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

In a criminal prosecution, FRE 404(b) requires the government, upon request by the accused, to provide reasonable notice "of the general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b). According to the advisory committee notes interpreting FRE 404(b), notice is required whether the evidence is intended to be used in the government's case-in-chief, for impeachment, or for rebuttal.

The Seventh Circuit has found chat logs admissible under FRE 404(b) in similar cases. *See United States v. Chambers*, 642 F.3d 588, 595 (7th Cir. 2011) (concluding that sexually explicit chat logs

properly admitted to show motive, intent, and absence of mistake in prosecution for child sexual exploitation charges); *United States v. Knope*, 655 F.3d 647, 657 (7th Cir. 2011) (concluded that chat logs were properly admitted to establish knowledge, intent, and lack of mistake when defendant expressed continued interest in having sex with minors, repeatedly pursued minors for sex, and attempted to meet with at least one minor in the past); *United States v. Zahursky*, 580 F.3d 515, 524-25 (7th Cir. 2009) (concluding that chat logs were properly used to show knowledge of minor status and absence of mistake regarding age). Similarly, forensic evidence related to other offenses has been admitted under FRE 404(b) as well. *See United States v. Haymond*, 672 F.3d 948, 957 (10th Cir. 2012) (concluding that search terms related to child pornography were sufficient to prove knowledge that the obtained images contained child pornography); *United States v. Pires*, 642 F.3d 1, 9 (1st Cir. 2011) (concluding that evidence of defendant's use of search terms associated with child pornography supported a finding that he knew the retrieved images contained child pornography).

Here, the other chats found on the defendant's cellular phone, involving Haley collectively demonstrate the defendant's motive,

opportunity, preparation, plan, intent, knowledge, identity, and absence of mistake or accident in reference to the offenses charged in the indictment. The defendant will likely try to argue either during the opening statement, through cross examination of witnesses, or in his own case-in-chief, should he present one, that he had no intention of following through on his words or that he was not interested in a sexual relationship with the minor.  The defendant, however, has shown as recently as 2018, however, that he has done exactly that. Based upon the text messages between the defendant and Haley, which were found on the defendant's phone, the defendant contacted an individual he knew to be seventeen, suggested that she live with him and engaged in a sexual relationship with the minor female.

Incredibly similar to the current situation, the defendant made contact with an individual online, who he learned was a minor. He then continued contact with the minor and engaged in in-depth discussions of a sexual nature. The defendant then set up a time and place to meet to engage in a sexual relationship. The defendant then took numerous steps to prepare for that meeting, including buying sexual lubricant, alcoholic beverages, and telling people to

lie to his girlfriend should she ask where he had gone. He then drove to the meet location at the determined time.

The government believes that the defendant will claim he either did not believe the minor was a minor or that he believed the minor was a bot or the government when he drove to the residence, but his past behavior and actions, evidence a clear understanding of meeting someone who is a minor, engaging them for sex, and making accommodations to do so. The proposed 404(b) evidence would be used to show his knowledge, intent, and lack of mistake. It would further combat any testimony claiming he did not understand what he was doing, what he believed at the time of the encounter, and whether or not he is predisposed to this type of behavior which as noted below is a direct argument against any type of entrapment defense. More specifically, the government requests to be allowed to use the evidence in rebuttal, as opposed to its case-in-chief to rebut the defendant's case.

Finally, the government requests to be allowed to use two calls from the Sangamon County Jail telephone system, and the testimony of the defendant's ex-girlfriend April Smith regarding his possession of child pornography to combat any entrapment claims.

Once again, the government only requests to use this 404(b) evidence in rebuttal. As noted below the principle element of an entrapment defense is that the defendant did not have a predisposition. *United States v. Al-Shahin*, 474 F.3d 941, 948 (7th Cir. 2007).

Shortly after being detained, the defendant called his then girlfriend at the time, April Smith from the Sangamon County Jail. During a call on September 4, 2020 between the defendant and April Smith, the defendant tells Smith not to say anything but then references pornography he was looking at, and what Smith had done with pornography she had looked at. During another call on September 8, 2020, the defendant requested that Smith delete his browser history.

In an interview with Smith on April 2, 2021, Smith stated that she deleted the images from the defendant's computer, but that some of the images contained what she believed to be child pornography, specifically images of the genital area of an individual Smith believed to be fifteen. A search warrant was obtained for the computer, but because of the type of hard drive the computer

contained, as well as the fact that the computer had cleaning software, agents were unable to locate the images Smith deleted.

## MOTION TO EXCLUDE ANTICIPATED DEFENSES

The government anticipates that the Defendant may assert various legal defenses at trial, all of which lack merit. The government also expects that the Defendant may try to introduce various evidence, all of which should be excluded.

### I. Entrapment

As a matter of law, the Defendant cannot meet his burden to proffer sufficient evidence that law enforcement entrapped him. "Entrapment is 'the apprehension of an otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law.'" *United States v. Plowman*, 700 F.3d 1052, 1057 (7th Cir. 2012) (quoting *Jacobson v. United States*, 503 U.S. 540, 553–54 (1992)). An entrapment defense contains two elements: (1) government inducement of the crime; and (2) lack of a defendant's predisposition to engage in criminal conduct. *United States v. Orr*, 622 F.3d 864, 868 (7th Cir. 2010); *United States v. King,* 75 F.3d 1217, 1223 (7th Cir.1996). Accordingly, to warrant presenting an entrapment defense to the jury, the defendant must proffer

sufficient evidence that a rational jury could infer that the government induced him to commit the crime and that he was not predisposed to commit the crime. *Plowman,* 700 F.3d at 1057; *United States v. Santiago-Godinez,* 12 F.3d 722, 727 (7th Cir. 1993).

Importantly, asking a defendant to do something criminal is not entrapment. *See United States v. Orr,* 622 F.3d 864, 869 (7th Cir. 2010) ("[W]here . . . the government simply invites the defendant to participate in the crime and does not employ any pressure tactics or use any other type of coercion to induce the defendant, a defendant is not entitled to an entrapment defense."); *Knope,* 655 F.3d at 661 (holding that an entrapment instruction was properly denied, because the most important factor in an entrapment defense is whether the defendant showed reluctance to engage in the criminal activity that was overcome by government inducement). A defendant must show that the government made "the sort of promise that would blind the ordinary person to his legal duties." *United States v. Haddad,* 462 F.3d 783, 790 (7th Cir. 2006). Merely acting upon a "simple, ordinary opportunity" to commit a crime is insufficient as a matter of law. *Id.*; *see United States v. Pillado,* 656 F.3d 754, 766 (7th Cir. 2011) ("[W]hen the

record reveals that a defendant was predisposed to commit the crimes charged, she is not entitled to an entrapment instruction unless she can show that the government provided an opportunity to commit the crime that was out of the ordinary.").

Furthermore, the absence of predisposition to commit the crime is the principle element of the entrapment defense. *See Pillado*, 656 F.3d at 764. When there is sufficient evidence that the defendant was predisposed to commit a crime, a trial court may foreclose the defendant from raising an entrapment defense without inquiring into government inducement. *United States v. Al-Shahin*, 474 F.3d 941, 948 (7th Cir. 2007); *see Pillado*, 656 F.3d at 764. Factors relevant to a determination that a defendant was predisposed to commit the crime include:

> (1) assessing the character or reputation of the defendant, including any prior criminal record; (2) whether the suggestion of criminal activity was made by the government; (3) whether the defendant was engaged in criminal activity for profit; (4) whether the defendant expressed reluctance to commit the offense which was overcome only by repeated government inducement or persuasion; and (5) the nature of the inducement or persuasion applied by the government.

*United States v. Perez-Leon*, 757 F.2d 866, 871 (7th Cir. 1985); *see also United States v. Blassingame*, 197 F.3d 271, 281 (7th Cir.

1999) (collecting cases); *United States v. Blackman*, 950 F.2d 420 (7th Cir. 1991) (finding no entrapment in an undercover sting case).

Relevantly, the Seventh Circuit has held, on remarkably similar facts to those at issue here, that an entrapment instruction was unnecessary in a § 2422(b) case. In *Knope*, the defendant entered a Yahoo! chat room and began talking to an undercover police officer, who told the defendant that she was 15-years-old. *See* 655 F.3d at 650-51. The defendant responded to learning the child's age by asking for a photograph of the girl. *Id.* The defendant in *Knope* expressed concern about the girl being law enforcement, so he asked her if she could prove that she was not a cop. *Id.* The conversation involved a discussion of a potential meeting and the sexual activity that would occur between the defendant and the girl. *Id.* Merely a few hours after having first met online, the defendant arrived at the meeting location and was arrested. *Id.*

The *Knope* court affirmed the denial of the entrapment instruction because of the overwhelming evidence of predisposition. Specifically, the Seventh Circuit pointed to the fact that the defendant initiated the conversation with the undercover, even though at that time the defendant did not know the age of the

person to whom he was talking. *Knope*, 655 F.3d at 661; *see also United States v. Cherian*, 2003 WL 261839 (5th Cir. Jan. 22, 2003) (finding that defendant initiated conversation with undercover officer when defendant sent the first message to the undercover agent who was already in an online chatroom and before undercover agent revealed she was underage). The *Knope* court also found it persuasive for predisposition that the defendant took an "active role in planning the meeting." *Id*. The defendant also initiated the discussion about the sexual activity. *Id*.

Here, the same reasoning applies. The defendant initiated the conversation with Alexis. While the profile originally stated that it was eighteen, as soon as the two moved from the MeetMe application, which was shortly after a conversation started, Alexis told the defendant that she was almost sixteen and reiterated the fact that she was fifteen multiple times. The defendant's response to being told the defendant's age was, "Oh wow, you're young." Furthermore, he stated that he thinks of himself as much younger as well. Later in the conversation, as noted above, Alexis stated that she did not believe they were talking about the same kind of fun. This gave the defendant another chance to disconnect from the

conversation and to terminate the discussion. Instead the defendant doubled down and started explaining the many sexual acts he wanted to do with the fifteen-year-old female. As noted in the *Knope* case, the defendant also took an active role in planning the meeting, explaining when he would be available, that he would drive to her, that he would cook for her, and that he would bring multiple items, including marijuana, sexual lubricant, and alcohol for the minor.  At least two of those items he specifically referenced as sexual aids. Finally, the defendant pushed the minor to allow him not to wear a condom during her first time because he could not get her pregnant.

Due to the overwhelming evidence of the defendant's predisposition, the Court need not even turn to the matter of government inducement, which does not exist, and instead may foreclose any argument as to entrapment based upon his predisposition.

## II. The "Fantasy" Defense

The Defendant also cannot show that he was merely engaging in a "fantasy" with the undercover agent, and he should be precluded from introducing any expert witness testimony or jury

instruction, or cross-examining any of the government's witnesses, to that effect. Defendants often attempt to introduce evidence in enticement cases that their chats or text messages constituted only "harmless fantasy," and that they either (1) believed that the "minor" was "over eighteen," *Knope*, 655 F.3d at 657; or (2) never intended to consummate the relationship, *see United States v. Taylor*, 640 F.3d 255, 263 (7th Cir. 2011) (Manion, J. concurring) (noting that the defendant twice refused to meet with the undercover agent and twice informed the agent that their relationship would "remain a 'fantasy'").

Courts have appropriately rejected expert testimony on this so-called "fantasy defense," since the defense itself simply constitutes a restatement of 18 U.S.C. § 2422(b)'s elements, which include (1) that the defendant knowingly attempt to persuade, induce, entice or coerce an individual to engage in sexual activity; and (2) that the defendant believe that the individual is less than eighteen years of age. *See* Seventh Circuit Pattern Criminal Jury Instructions § 2422(b); *United States v. Stahlman*, 934 F.3d 1199, 1220–22 (11th Cir.), *cert. denied*, 140 S. Ct. 530, 205 L. Ed. 2d 347 (2019). For instance, in *Stahlman*, the defendant attempted to

introduce expert testimony that "[t]here [was] insufficient behavioral evidence to conclude that [the defendant] intended to have real sex with a minor, rather than act out a fantasy involving adults," and that "[t]he clinical evidence suggest[ed] that [the defendant] intended to act out a fantasy, rather than have sexual contact with a minor." *Id.* The court rejected that proposed testimony, concluding that the statements "plainly" ran afoul of FRE 704(b)'s directive "that an expert not opine on whether a criminal defendant had or did not have the requisite mental state," and "would, in effect, be telling the jury [that the defendant] did not intend to induce a minor to engage in sexual activity." *Id.*

The Seventh Circuit reached the same conclusion with respect to jury instructions. In *Knope*, the defense requested an instruction that the jury could acquit "if it found that [the defendant] 'believed in good faith that the person he was communicating with on the internet and by telephone was not under the age of 18." 655 F.3d at 661. The court upheld the district court's refusal to issue that instruction, noting "this defense was included in the definition of the term 'knowingly' that was provided to the jury." *Id.*; *see also United States v. Given*, 164 F.3d 389, 394–95 (7th Cir.1999) (refusal

to give specific good faith instruction was not error where judge had clearly defined the term "knowingly" using this circuit's pattern instruction). Similarly, in *Orr*, the defendant sought a jury instruction that he "was merely role playing or living out a fantasy" and "believe[d] [the individual] was an adult pretending to be a child." 819 F. App'x at 769. The court upheld the district court's rejection of that instruction, noting that it was simply "a judicial narrative of [the defendant's] version of the facts" couched as "an objective instruction on the law." *Id.*

The Seventh Circuit has also affirmed district court rulings that limited the cross-examination of government agents on the fantasy defense (i.e., the predilection of individuals engaged in online chatting to engage in "fantasies" or lie to one another). In *United States v. Taylor*, 777 F.3d 434 (7th Cir. 2015), the court upheld a district court's limitation of a defendant's line of questioning that related to "the general veracity of chat-room users." The court concluded that the district court judge "appropriately excluded questions about the officers' observations of other chat-room users" because "it was speculative and misleading." *Id.*

## III. The Defendant's Character

The Court should also exclude any evidence that goes to the character of the defendant, beyond his character for truthfulness. The government expects that the defense may seek to introduce (1) evidence of a lack of proclivity for child sex abuse (i.e., "profile" evidence); and (2) evidence of the Defendant's unrelated good acts. Neither type of evidence should be admissible in this matter.

### A. No Lack Of Proclivity For Child Sex Abuse Evidence

Defendants frequently attempt to introduce evidence— particularly expert testimony—that they do not meet the "profile" of a typical sex offender. But this evidence is irrelevant. The Defendant is not charged with being a pedophile, nor is fitting the alleged profile of a pedophile an element of the crime that the government must prove. Federal case law supports this position even in cases where the defendant was charged with actually molesting a child, or where such profile evidence is offered affirmatively by the government. *See United States v. Powers*, 59 F.3d 1460 (4th Cir. 1995) (upholding district court's refusal to allow defendant charged with aggravated sexual abuse of minor to submit "expert" testimony that he did not fit the psychological profile of pedophile as

irrelevant); *Barner v. State of Nevada*, 19 F.3d 25 (unpublished) (9th Cir. 1994) (testimony regarding pedophilia profile not probative since defendant not charged with being a pedophile); *Unites States v. Banks*, 36 M.J. 150, 161 (U.S. Court of Military Appeals 1992) (use of any characteristic "profile" as evidence of either guilt or innocence in criminal trials is improper and both federal and state case law has "severely criticized attempts to introduce 'profile' evidence to establish guilt or innocence."); *United States v. Gillespie*, 852 F.2d 475, 480 (9th Cir. 1988) (holding that expert testimony about the typical characteristics of child molesters was impermissible propensity evidence and stating that such "testimony of criminal profiles is highly undesirable as substantive evidence because it is of low probativity and inherently prejudicial"); *United States v. Wells*, 879 F.3d 900, 920 (9th Cir. 2018) (holding that expert testimony on the defendant's profile was improperly admitted and noting "[o]ur law punishes people for what they do, not who they are" (quoting *Buck v. Davis*, 137 S.Ct. 759, 778 (2017)).

Similarly, as noted above regarding the fantasy defense, this type of evidence constitutes improper testimony on an ultimate issue of fact—that is, whether the defendant had the requisite

mental state constituting an element of the offense or of a defense thereto. *See* Fed. R. Evid. 704(b); *United States v. Esch*, 832 F.2d 531 (10th Cir. 1987) ("An expert may not substitute her judgment as to the defendant's state of mind by testifying that because of the defendant's personality, she would not have acted in a particular matter."); *United States v. Raymond*, 700 F. Supp. 2d 142, 155 (D. Me. 2010) (rejecting expert testimony that attempted to "predict individual intent. . . from patterns of isolated individual behavior that [the expert] has catalogued and categorized").

Defendant's character is not an essential element of the crime charged, and therefore evidence and testimony of specific instances of defendant's conduct (*i.e.* times when did not groom a minor for sexual activity) are not admissible. Fed.R.Evid. 405(b). Further, Fed. R. Evid. 404(a) prohibits the use of character evidence to prove that on a particular occasion a person acted in accordance with that character or trait.

The introduction of any character evidence must be tied to a pertinent character trait. Pertinent generally means relevant, or determinative of a fact at issue for the jury. *United States v. Staggs*, 553 F.2d 1073, 1075 (7th Cir. 1977). General lawfulness is not

permissible. *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012) (evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment); *United States v. Mack*, 298 F.R.D. 349, 352 (N.D. Ohio 2014), aff'd, 808 F.3d 1074 (6th Cir. 2015) ("Evidence that an individual acted lawfully on other occasions not charged in the indictment is generally inadmissible in that it does not negate the charge that he acted with criminal intent on another occasion").

The government is therefore unaware of any character evidence that is relevant to or determinative of the jury's factual determinations in this case. The defendant met the OCE on a dating application. The defendant learned the OCE was underage, pursued a sexual relationship with the minor, and the two agreed to meet after less than a week of conversation. The defendant cannot proffer any character trait evidence that contravenes these facts and is relevant to the issue of guilt. Furthermore, any such proffer would be immediately countered with the fact that the defendant had a prior sexual relationship with another minor, Haley, directly in contradiction to such a position.

## B. Unrelated Good Acts By The Defendant

For very similar reasons, this Court should prevent the defendant from introducing any evidence of his unrelated good acts (i.e., volunteer or charity work). As noted above, the Seventh Circuit has held that Rule 404(b) prohibits the admission of evidence of good conduct where it is offered to prove that a defendant acted in conformity with his good character. *Hill*, 40 F.3d at 168. While the Court specifically considered a defendant's proffer of prior lawful conduct where she had refrained from an opportunity to engage in criminal activity, its logic applies with even more force here, where the admission of purportedly "good" activities entirely unrelated to the defendant's criminal conduct is at issue. Evidence of the defendant's unrelated good acts, such as charity or volunteer work, would be irrelevant to proving or disproving the charged offenses and would only serve as an end-around to comment on the defendant's mental state or condition, or otherwise justify or mitigate his conduct.

## IV. The Defendant's Intent

In terms of intent, the defendant also may try to assert that he never specifically intended to engage in sexual activity with the

undercover agent on the date of his arrest, or that he never took a "substantial step" toward engaging in such activity. As the Seventh Circuit has noted, however, the underlying crime of attempted enticement requires proof that a defendant "intended to persuade, induce, or entice someone whom he believed was a minor to engage in sexual activity—not that he intended to engage in sexual activity." *United States v. Berg*, 640 F.3d 239, 251 (7th Cir. 2011); *see United States v. Cote*, 504 F.3d 682, 687–88 (7th Cir. 2007) ("For an attempt conviction, the Government was required to prove that Mr. Coté acted with the specific intent to commit the underlying crime and that he took a substantial step towards completion of the offense . . . . By proving that Mr. Coté intended to entice a person whom he believed to be a minor into sexual acts and that he flew to Chicago to meet her, the Government has fulfilled this burden."); *see also, United States v. Yost*, 479 F.3d 815, 819 n.3 (11th Cir. 2007) (in Section 2422(b) attempt case, a defendant's specific intent to engage in sexual activity need not be proven); *United States v. Lee*, 603 F.3d 904, 914 (11th Cir. 2010) ("[w]ith regard to conduct, the government must prove that the

defendant took a substantial step toward causing assent, not toward causing actual sexual contact").

Thus, a defendant's "substantial step" will necessarily be towards the persuasion, inducement, or enticement—not the commission of a sexual act. *See Berg*, 640 F.3d at 251 (noting that "a face-to-face meeting in the course of a grooming process can be sufficient proof of a 'substantial step'"). Importantly, the Seventh Circuit has stated that a substantial step "can be making arrangements for meeting the [minor], as by agreeing on a time and place for the meeting." *United States v. Gladish*, 536 F.3d 646, 649 (7th Cir. 2008). Or it can involve "other preparatory steps, such as making a hotel reservation, purchasing a gift, or buying a bus or train ticket, especially one that is nonrefundable." *Id.*; *see also United States v. Zawada,* 552 F.3d 531, 535 (7th Cir. 2008) (upholding conviction for enticement where the defendant and purported minor never met, but the two had a concrete conversation about where and when they would meet and the defendant ensured the purported minor was taking birth control).

Any testimony regarding defendant's intent (or lack thereof) or to commit a sexual act with a minor is not a fact the jury need

determine. Enticement under § 2422(b) "criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions vis-à-vis the actual consummation of sexual activities with the minor." *Berg*, 640 F.3d at 252 (internal citations omitted). The statute's focus is on the intended effect on the minor rather than the defendant's intent to engage in sexual activity. *Id.*

Here, the chats between the defendant and the OCE again show a lack of evidence to support the claim that he did not intend to engage in sexual activity with who he believed was a fifteen-year-old girl. On the contrary, as discussed above he is clearly very willing to engage in sexual behavior, and takes a number of steps towards that goal; including arranging the time and place of where the minor and he will meet, asking for the address, purchasing alcohol and sexual lubricant requested by the OCE, bringing marijuana that he had promised the OCE because, "Your gonna love smoking weed…and it will make your first time having sex an amazing experience because weed heightens everything you do. Especially if your new to it," and even taking the time to create an alibi so that his girlfriend would not be suspicious.

During the interview with law enforcement, the defendant attempted to claim that he was not sure that the OCE was actually fifteen. However, he admitted that he was the one that was chatting with Alexis, and eventually admitted that he was aware the profile was a minor. Even by the defendant's own, largely self-serving, claims that he was unsure as to the actual age of the OCE, there is little to no evidence to show that he had any intention other than to engage in sexual activity with the OCE. Even if he were to claim that he wouldn't have gone as far as the oral sex, the other actions would still constitute a substantial step toward the sexual conduct that would meet the requirements of the statute.

## V. The Defendant's Mental Health Or Capacity

The Court should exclude any evidence that the defense tries to introduce regarding the defendant's mental health or diminished capacity. Defendants in similar cases often seek to introduce generalized evidence of diminished capacity to excuse or justify their actions. Other courts have noted that diminished capacity evidence is more properly raised at sentencing, however, and that any such evidence must be "carefully "scrutinize[d]" to ensure "that it is being offered to negate [specific] intent rather than to justify or

mitigate the crime," and that it will not confuse or mislead the jury. *Biron v. United States,* No. 16-CV-108-PB, 2017 WL 4402394, at *4–6 (D.N.H. Oct. 2, 2017); *see United States v. Jimenez*, No. 16-CR-60-A, 2019 WL 2211458, at *9–10 (W.D.N.Y. May 22, 2019), *aff'd*, 831 F. App'x 571 (2d Cir. 2020) (noting that "general and temporally indefinite diminished capacity evidence is not likely to be admissible" and that it is "the defendant's burden to establish the fit of any mental-health expert opinion within the narrow confines of evidence tending to negate his specific intent"); *United States v. Martinez*, 923 F.3d 806, 815–16 (10th Cir. 2019) ("Courts must be cautious about admitting marginally relevant mental-health evidence because the jury may think that it provides an 'excuse' for misconduct or it may otherwise generate sympathy for the defendant." *citing United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990)).

For example, in *United States v. Litzky*, No. 6:18-CR-223, (M.D. Fla. Dec. 11, 2019), the defendant attempted to introduce expert testimony regarding her "diminished capacity." The district court rejected the evidence, however, noting that the evidence did not focus on the defendant's state of mind at the time of the

charged offenses, failed to show how the defendant could not form the required *mens rea*, and would only have confused the jury, who would be "left to speculate as to the effect of her . . . mental health issues" on her criminal conduct. *Id.* at *5; *see also United States v. Lilley*, No. 15-6415, 2017 WL 7048806, at *4–5 (6th Cir. July 26, 2017) (concluding that the district court did not err in rejecting a jury instruction about the defendant's mental health issues where they did not negate the *mens rea* for the charged crimes).

## VI. The Consent Of The "Child"

Last, the defendant may attempt to introduce evidence or testimony regarding the consent or willingness of the undercover agent. Courts often refer to this as the "willing participant" or "hot to trot" defense, and have generally rejected it. For example, in *United States v. Dhingra*, 371 F.3d 557 (9th Cir. 2004), *as amended on denial of reh'g* (July 23, 2004), the Ninth Circuit noted, "The victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation." Similarly, the Eighth Circuit concluded, in *United States v. Myers*, 575 F.3d 801 (8th Cir. 2009), that even if "[the minor involved]

acted as though they were ready and willing to engage in various sex acts," that fact "does not vitiate [the defendant's] attempted enticement." *See, e.g., United States v. Kaye*, 451 F.Supp.2d 775, 784 (E.D. Va. 2006) ("No degree of interest, curiosity, or mutual enticement from a thirteen-year-old is enough to find that Defendant's aggressive language and actions are not an attempt to persuade, induce, and entice the individual to engage in sexual activity."); *United States v. Dye*, No. 09-3410, 2010 WL 4146187, at *2–3 (3rd Cir. 2010) (determining that jurors had good reason to reject a " 'hot to trot' defense" that argued that undercover agent's "role playing made it clear from the outset that he was ready to go," thus making enticement impossible); *United States v. Lundy*, 676 F.3d 444, 449 (5th Cir. 2012) (rejecting argument "that because [the fictitious minor] was willing, there was no enticement, inducement, or persuasion involved"); *United States v. Chip*, 762 F. App'x 86, 89–91 (3d Cir. 2019) ("While overcoming a minor's unwillingness to engage in sexual activity can certainly support an enticement conviction, so can less stark instances of inducement . . . . [E]nticing an already-curious minor to [engage in sexual activity] is also prohibited."); *United States v. Harmon*, 593 F. App'x 455, 463

(6th Cir. 2014) ("However, it is possible to persuade, induce, entice, or coerce a minor to engage in sexual activity even if the minor had a predilection to do so.").

Indeed, the Seventh Circuit has described the essence of attempted enticement as an attempt "to obtain the minor's assent" to sexual activity, and upheld a conviction even where the defendant argued that the minor's "mind was already made up," that "she needed no enticing," and that "he was merely a willing participant who responded to [her] pre-existing, fully-formed sexual desires." *See United States v. Hosler*, 966 F.3d 690, 692–93 (7th Cir. 2020).

Here, there is little argument that by the time the defendant arrived at the planned meeting location, that the minor, as portrayed by the OCE, was a willing participant. However, throughout the conversation between the defendant and the minor profile, the defendant tells Alexis what sexual acts he intends to do with her, and when Alexis responds that she has not tried that or that she is inexperienced, the defendant responds by telling her that she will enjoy it, that he wants to try things she has not experienced before, and even that he should not have to wear a

condom because he cannot get the minor pregnant. The OCE is not pushing the defendant into any sexual interactions, rather the OCE is responding to the requests of the defendant and agreeing to sexual acts that the defendant asserts or desires. As in the cases discussed above, the OCE's assent to the requests of the defendant does not negate the defendant's enticement of the OCE, and arguments to that effect would be improper.

## MOTION TO EXCLUDE EVIDENCE REGARDING THE CHS'S IDENTITY

The government will not introduce the substance of the conversations that the FBI had with the CHS prior to the August 28-29, 2020 undercover operation. Defendant communicated entirely with the agent who only used images of the CHS while communicating with the defendant. The only information concerning the CHS will be the use of her photos and one recorded call that occurred between the CHS and the defendant. However, even in presenting the call, the government does not plan on using the statements of the CHS for the truth of the matter asserted, but rather to give context to the defendant's portion of the conversation. Furthermore, the call was recorded and an FBI agent was present

for the call and his voice is recorded at the beginning and end of the call.  Thus, there will be no hearsay issues as the government does not intend to introduce out-of-court statements for the truth of the matter of those statements of the CHS in its case-in-chief. Nor will the credibility of the CHS be relevant because the CHS's statements will not be introduced and the CHS will not be called as a witness. Thus, the government has eliminated any confrontation issues.

Evidence regarding the government's refusal to identify the CHS is not relevant and should be excluded. The "confidential informant privilege" protects from disclosure an informant's identity and her communications with the government that may tend to reveal her identity. *United States v. Valles,* 41 F.3d 355. 357 (7th Cir. 1994); *citing Roviaro v. United States,* 353 U.S. 53; *United States v. Herrero,* 893 F.2d 1512, 1525 (7th Cir. 1990), *certiorari denied,* 496 U.S. 927. The government is granted this limited privilege as a right, and need not make a threshold showing of likely reprisal or retaliation against the informant in order to assert the privilege. *Dole v. Local 1942,* IBEW, 870 F.2d 368, 372 (7th Cir. 1989). While a defendant can overcome the confidential informant privilege by demonstrating a need for the information, he bears this

burden in the face of an assumption that the privilege should apply. *United States v. Bender,* 5 F.3d 267, 270 (7th Cir. 1993) (defense counsel must establish that defendant "possesses a genuine need of informant disclosure that outweighs the public's interest"); *United States v. Andrus,* 775 F.2d 825, 842 (7th Cir. 1985); *United States v. Tucker,* 552 F.2d 202, 209 (7th Cir. 1977).

The Supreme Court has instructed courts to balance the defendant's asserted need against the government's interest, considering "the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors" in determining whether to order disclosure. *Id.; citing Roviaro,* 353 U.S. at 62. "Informants who played major roles in the criminal occurrences will of course offer more significant testimony than those whose participation was peripheral; a showing that a potential defense may depend on the informant's involvement also weighs in favor of disclosure." *Id.*

In this case, the defense has not made a showing that they possess a genuine need of informant disclosure that outweighs the public's interest - nor can they do so. The government does not intend to call the CHS to testify, her statements will not be offered

into evidence, and none of the government's evidence depends in any way upon the veracity of the CHS's information. Instead, the CHS is not unlike a prop whose image and voice were used to initiate a criminal investigation that produced evidence against the defendant. Here, the CHS's role was not significant, but rather, was merely peripheral to the undercover investigation. *See United States v. Andrus,* 775 F.2d 825, 842 (7th Cir. 1985) (no disclosure of informant who instigated investigation of defendant but was not present at transactions alleged in indictment). Accordingly, the defense has not made a showing of the need of the CHS's identity - nor can they do so.

Because the determination of whether the CHS's identity should be disclosed to the defense is made by the Court as a matter of law, the issue of whether the government must identify the CHS is not for the jury. As such, if the Court determines as a matter of law that the defense has failed to make its showing, then the defense should be precluded from eliciting testimony or evidence regarding the government's refusal to identify the CHS because it is not relevant. Indeed, the defense should be precluded from arguing that their client is somehow prejudiced by the fact that they were unable

to call the CHS as a witness, and should be precluded from arguing that the information regarding the CHS was not disclosed in discovery.

Accordingly, the government moves to preclude the defense from arguing before the jury that the government refused to identify the CHS, that the CHS's identity should have been produced in discovery, that the defendant is prejudiced by the fact that they do not have access to the CHS, and that if produced, the information from the CHS would have been favorable to the defense.

Similarly, in the event the defendant has deduced the CHS's identity and calls her as a witness, or if the Court requires the government to disclose the CHS's identity, the defense should be precluded from calling the CHS as a witness as a subterfuge to present otherwise inadmissible impeachment evidence, specifically her actual age, identity, or other irrelevant evidence. The only relevant information about the CHS is that at the time of the investigation she was an adult and working with the FBI voluntarily. Any information about her personal demographics or history is irrelevant to any fact at issue for the jury's determination.

Accordingly, if the defense is aware of or becomes aware of the

CHS's identity, then the government moves to preclude the defense from calling the CHS as a defense witness simply to elicit testimony about her identity or to cross examine the agents about her identity.

## MOTION TO EXCLUDE ARGUMENT OR EVIDENCE DESIGNED TO ELICIT JURY NULLIFICATION

The law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. *See, e.g., United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification is not to be positively sanctioned by instructions, but is to be viewed as an aberration under our system.") (quotation omitted); *United States v. Laguna*, 693 F.3d 727, 731 (7th Cir. 2012) (district court properly excluded evidence regarding prior lenient treatment enjoyed by illegal reentry defendant as irrelevant and potentially inviting of nullification). Accordingly, the government requests that the Court enter an order precluding defendant from arguing that the jury should disregard the Court's instructions on the law or presenting evidence or pursuing lines of inquiry designed to invite jury nullification. Although the government cannot anticipate each form of potential jury

nullification argument or evidence, the government moves to exclude the areas noted below, as well as any argument or questioning, no matter what its form, that, in effect, would "encourage a jury to acquit under any circumstances regardless of the applicable law or proven facts." *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983) (citation omitted).

## I. Penalties Faced by the Defendant if Convicted

The Seventh Circuit unequivocally has held that "arguing punishment to a jury is taboo." *See, e.g., United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), *overturned on other grounds*, 526 U.S. 813 (1999); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). Argument and evidence concerning punishment are improper because the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. See, e.g., *Shannon v. United States*, 114 S. Ct. 2419, 2424 (1994) ("It is well established that when a jury has no sentencing function it should be admonished to "reach its verdict without regard to what sentence might be imposed.") (quotation omitted); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000)

(same).[3] Mention of the potential penalties faced by the defendant –

including possible imprisonment, restitution, or fines – would serve

only the improper purpose of inviting the jury to consider the penal

consequences of a conviction on and ultimately, nullification.

## II. Government's Motivations for Investigating and Prosecuting the Case

Evidence bearing on the government's decision to prosecute is

"extraneous and collateral." United States v. Johnson, 605 F.2d

1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence

offered to show that the "indictment was a political instrument").

More specifically, evidence concerning whether and why certain

individuals were charged or not charged is irrelevant to the question

of defendant's guilt. *See United States v. Young,* 20 F.3d 758, 765

(7th Cir. 1994) (where defendant claimed he did not knowingly

participate in drug transaction, "[w]hether or not [co-arrestee] was

criminally charged does not make the facts relating to [defendant's]

knowledge and participation in the attempted purchase more or less

probable") (citing FED. R. EVID. 401); *United States v. Mosky,* 1990

WL 70832, at *1 (N.D. Ill. May 7, 1990) ("The government seeks to

---

[3] Pattern Jury Instructions 4.08 (2020) is consistent with this case law and the government intends to propose that this instruction be given.

bar only any reference to its decisions regarding who to indict and for what acts. The government is correct that those decisions are not relevant to the charges faced by these defendants.") Further, inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See*, e.g., *United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant").

## III. Allegations of Outrageous Government Conduct

The government moves to preclude the defendant from presenting arguments or evidence concerning allegations of governmental misconduct and/or outrageous government conduct. Because claims of alleged misconduct on the part of the prosecutor or investigating agents are irrelevant to the merits of the case, suggesting to the jury that alleged misconduct provides a basis for acquittal is an invitation for the jury to nullify.

The impropriety of arguing allegations of governmental misconduct to the jury is twofold. First, and most fundamentally,

the Seventh Circuit has rejected the outrageous government conduct defense and has held that such claims afford no defense to a criminal prosecution as a matter of law. *See United States v. Westmoreland*, 712 F.3d 1066, 1071 (7th Cir. 2013) (the outrageous government conduct defense is "disallowed" in the Seventh Circuit); *United States v. White*, 519 F.3d 342, 346 (7th Cir. 2008) (same). Second, the issue of government misconduct is a matter of law for determination by the court: "the issue of outrageous government conduct is not an issue for the jury." *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that "outrageous government conduct" is not a jury question) (citations omitted); *United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995) ("outrageous government conduct" is no defense to a criminal charge). Accordingly, defendant should be precluded from attempting to defend this case by attacking the propriety of the government's conduct.

## MOTION TO PRECLUDE DISCOVERY REQUESTS OR COMMENTARY IN THE PRESENCE OF THE JURY

Commentary regarding discovery, including discovery

disputes and requests, should not be made in the presence of the jury. Requests for, and motions related to, discovery made in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. In fact, as often happens, counsel's requests are ill-founded because the discovery has already been tendered or is not subject to disclosure. In any event, these requests can easily be made to the Court or opposing counsel outside the presence of the jury with no prejudice resulting to either side. Accordingly, the government moves the Court to order that requests for discovery or comments relating to discovery be made outside the presence of the jury. *See, e.g., United States v. Gray,* 2010 WL 1258169, *3 (N.D. Ind. Mar. 26, 2010) (granting government's motion to preclude the defense from requesting or commenting on discovery in the presence of the jury).

## CONCLUSION

WHEREFORE, the government respectfully requests that this Court allow the introduction of the above evidence pursuant to 404(b), and that the Court preclude the defendant from raising the

noted defenses and entering the impermissible hearsay as they are improper and irrelevant.

Respectfully Submitted,

DOUGLAS J. QUIVEY
ACTING UNITED STATES ATTORNEY

By:  */s/* Tanner K. Jacobs
 Tanner K. Jacobs, PA Bar No. 319265
 Assistant United States Attorney
 United States Attorney's Office
 318 South Sixth Street
 Springfield, IL 62701
 Phone: 217-492-4450
 Email: tanner.jacobs@usdoj.gov

 */s/ Gregory K. Harris*
 Gregory K. Harris, IL Bar No. 1135163
 Assistant United States Attorney
 United States Attorney's Office
 318 South Sixth Street
 Springfield, IL 62701
 Telephone: (217) 492-4450
 Email: Gregory.Harris@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participant(s) in the case.

*/s/ Tanner K. Jacobs*
Assistant United States Attorney
United States Attorney's Office