UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD, ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | 3:20-cr-30048-SEM-TSH |
| RAFAEL MERCADO-BERRIOS, ) | |
| Defendant. ) | |

**MOTION TO DISMISS INDICTMENT**
**FOR SPEEDY TRIAL VIOLATIONS**

Defendant Rafael Mercado-Berrios, by his attorney Rosana E. Brown of the Federal Public Defender's Office, and pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and the Sixth Amendment, moves this Court to dismiss the Indictment with prejudice and order his immediate release.  In support thereof, he provides the following:

**I.   Introduction**

Our Supreme Court has twice in recent months ruled that the COVID-19 pandemic did not suspend the operation of our constitutional rights and guarantees.  *See South Bay United Pentecostal Church v. Newsome*, 141 S. Ct. 716 (2021) (granting

injunctive relief against California's ban on indoor religious services due to COVID); and *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (*per curiam*) (granting enjoiner against New York's pandemic restrictions on religious attendance). While the Court examined the First Amendment's Free Exercise Clause, the premise applies equally here—"even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Catholic Diocese*, 141 S. Ct. at 68.

The right to a speedy and public trial is one of the most valued constitutional guarantees. *See Klopfer v. State of N.C.*, 386 U.S. 213, 225 (1967) (The history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution."); and *Furlow v. United States*, 644 F.2d 761, 769 (9th Cir. 1981) ("Except for the right of a fair trial before an impartial jury no mandate of our jurisprudence is more important.").

> Given the constitutional importance of a jury trial to our democracy, a court cannot deny an accused his right to a jury trial even if conducting one is difficult. This is true whether the United States is suffering through a national disaster, a terrorist attack, civil unrest, or the coronavirus pandemic that the country and the world are currently facing. Nowhere in the Constitution is there an exception for times of emergency or crisis.

*United States v. Henning*, __ F. Supp. 3d __, 2021 WL 222355 *1 (C.D. Cal. Jan. 19, 2021). Yet, this district and others suspended criminal jury trials for a one year period between March 2020 and March 2021 due to the coronavirus pandemic. Mr. Mercado proposes that the total suspension violates both the Speedy Trial Act and the Sixth Amendment.

## II. Speedy Trial Act

The Speedy Trial Act of 1974, as amended, requires that:

> [T]he trial of a defendant charged in an information or an indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charges is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). The Act also provides for "periods of delay" that are excluded in calculating the seventy days. *See* § 3161(h).

"If a defendant is not brought to trial within the time limit required by § 3161(c) as extended by § 3161(h), the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). "The defendant shall have the burden of proof of supporting such motion but the government shall have the burden of going forward with the evidence in connection with an

exclusion of time under subparagraph 3161(h)(3)." 18 U.S.C. § 3162(a)(2).

The ends-of-justice provision excludes "[a]ny period of delay resulting from a continuance ... if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The district court relied on the ends-of-justice provision in prospectively excluding from the speedy trial calculation the entire time period of courthouse closures due to COVID-19. *See* Seventh Amended General Order 20-01.

Mr. Mercado proposes that the exclusion of all time between his arraignment on the Indictment, September 23, 2020, and the date on which the district court ended its suspension of criminal jury trials, March 23, 2021, is not justified by the COVID-19 pandemic and that jury trials could have been conducted with adequate precautions, but-for this district's Amended General Order 20-01 suspending jury trials and its subsequent

4

amendments.[1]  Many courts retro-fitted their courtrooms to include protective barriers and socially distanced jury boxes and conducted jury trials.[2]  Yet, defendants in pretrial detention in this district had no such opportunity.  Nevertheless, our grand juries consisting of 18 citizens continued to meet and issue indictments during this same time period.[3]

Admittedly, most of the district courts to have ruled on this question to date have denied defendants relief and excluded COVID delay from the Speedy Trial clock under 18 U.S.C. § 3161(h)(7).  *See e.g., United States v. Pierson*, No. 1:18-CR-00155, 2021 WL 859737 (S.D. Ind. Mar. 8, 2021); *United States v. Pair*, No. 3:20-CR-3, 2021

---

[1] To the extent that the government may argue that motions to continue filed by the defense during the COVID closure constitute waiver of Speedy Trial rights, those motions included specific objections to the exclusion of time and sought to preserve Mr. Mercado's rights while at the same time facilitating the Court's calendar in light of Amended General Order 20-01 and its subsequent amendments.

[2] The Sangamon County Circuit Court retrofitted one courtroom to accommodate socially distanced jury trials with plastic barriers and individual jury boxes; four jurors are seated in the former jury box and another ten juror boxes have been created in the galley.  The court has conducted five felony criminal jury trials since September 2020.  A second courtroom is slated for retrofitting this summer.  *See also e.g.*, Jolie McCullough, *A Texas Man was sent to Trial with the Coronavirus. Jurors weren't Told they were Exposed until after Deliberations ended.*, The Texas Tribune (Jan. 5, 2021) (Texas conducted 47 jury trials between June and October 2020, and used sports arenas and convention centers for socially distanced jury selection).

[3] Counsel attempted to obtain data on how many times the grand jury met and how many indictments issued from the clerk's office, but was instructed that such a request would have to go through the U.S. Attorney's Office.

WL 772235 (E.D. Va. Feb. 26, 2021); and *United States v. Elliott*, 3:19-CR-00112, 2021 WL 416158 (D. Ala. Feb. 5, 2021). However, two district judges have dismissed cases based on speedy trial violations and determined that the COVID-19 pandemic did not justify a total suspension of speedy trial rights. *See Henning*, 2021 WL 222355 (Carney, J.) (dismissing with prejudice); and *United States v. Sheikh*, __ F. Supp. 3d __, 2020 WL 5995226 (E.D. Cal. Oct. 9, 2020) (Shubb, J.) (dismissing without prejudice). The government did not appeal these rulings. Accordingly, Mr. Mercado asserts and preserves his claim for appeal.

The government did appeal a third grant of dismissal for speedy trial violation in *United States v. Olsen*, __ F. Supp. 3d __, 2020 WL 6145206 (C.D. Cal. Oct. 14, 2020), and the Ninth Circuit recently issued an opinion reversing the dismissal and delineating factors that courts should consider in determining whether COVID delay should be excludable time using the ends of justice exception, *United States v. Olsen*, __ F.3d __, 2021 WL 1589359 (9th Cir. 2021). While the Ninth Circuit ruling is not binding, it can be instructive. The Court established the following non-exhaustive list of factors to be considered: "(1) whether a defendant is detained

pending trial;[4] (2) how long a defendant has been detained;[5] (3) whether a defendant has invoked speedy trial rights since the case's inception;[6] (4) whether a defendant, if detained, belongs to a population that is particularly susceptible to complications if infected with the virus;[7] (5) the seriousness of the charges a defendant faces, and in particular whether the defendant is accused of violent crimes;[8] (6) whether there is a reason to suspect recidivism if the charges against the defendant are dismissed;[9] and (7) whether the district court has the ability to safely conduct a trial.[10]  Nevertheless, in light of the Supreme Court's recent

---

[4] Mr. Mercado is detained and was denied release on bond and reconsideration of detention.
[5] He has been detained since August 28, 2020.
[6] Mr. Mercado has asserted his speedy trial rights since the case's inception in his motions to continue.  To the extent that the government may argue that defendant's filing of motions to continue waived the exclusion of time despite his assertion, the Court should not hold the actions of counsel against the defendant for merely accommodating the facilitation of this Court's docket during a time when trying to obtain a jury trial would have been futile and prohibited by the district's General Orders.
[7] Mr. Mercado suffers from mental illnesses.  Recent studies have shown that people with mental illness have greater risk of contracting the virus and higher morbidity rates.  Shawn Radcliffe, *People with Mental Health Conditions are at Higher Risk for COVID-19, so why aren't they being Prioritized*, Healthline.com (Feb. 20, 2021), https://www.healthline.com/health-news/people-with-mental-health-conditions-are-at-high-risk-for-covid-19-so-why-arent-they-being-prioritized.
[8] This is not a violent crime.
[9] Mr. Mercado has no prior criminal record.
[10] The Sangamon County Circuit Court safely conducted five felony jury trials with courtroom modifications.

attestations to the viability of constitutional guarantees even during a pandemic, Mr. Mercado preserves his claim.

Historically, times of crises have warranted speedy trial exclusions, but those exclusions have been either limited in time or made because courthouses were inaccessible. *See Furlow v. United States*, 644 F.2d 764 (9th Cir. 1981) (excluding one month after the eruption of Mt. St. Helens); *United States v. Sanchez-Senda*, No. 17-529, 2018 WL 1737615 (D. P.R. Apr. 9, 2018) (excluding time after Hurricane Maria); and *United States v. Correa*, 182 F. Supp. 2d 326 (S.D.N.Y. 2001) (excluding two weeks after 9/11 attacks). Court closures and the prospective exclusion of time from the speedy trial calculation for a period exceeding one year is unprecedented.[11] And the lack of limitation in time together with the fact that jury trials

---

[11] Even during the Spanish Flu of 1918, courts remained operational. Some courts held outdoor sessions. Katie Canales, *Photos Show the Precautions US Cities Took to "Flatten the Curve' during the 1918 Spanish Flu Pandemic*, Business Insider (Apr. 13, 2020), https://www.businessinsider.com/spanish-flu-pandemic-1918-precautions-us-cities-2020-4. New York City brought in hundreds of people at a time for "spitting" violations and fines. *See* Francisco Aimone, *The 1918 Influenza Epidemic in New York City: A Review of the Public Health Response*, Public Health Rep. (2010), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2862336/. While jury trials were suspended for nearly a three year period of martial law in territorial Hawaii following the attack on Pearl Harbor, military tribunals were used in their place. *See* Fred L. Israel, *Military Justice in Hawaii 1941-1944* 243, Pacific Hist. Rev. 36, No. 3 (Aug. 1967).

were physically possible to conduct safely should lean in Mr. Mercado's favor in the speedy trial analysis.

We know that jury trials were possible to conduct safely, as various courts around the country—federal courts included—continued to operate and hold jury trials, and grand juries continued to meet and issue new criminal indictments.[12] The Central District of Illinois stands with the minority of district courts nationwide that entered blanket suspensions of jury trials for the entire pandemic. US Courts, *Courts Suspending Jury Trials as COVID-19 Cases Surge* (Nov. 20, 2020).[13] The Chief Judge for the

---

[12] *See e.g.*, Robert Patrick, *Federal Court in St. Louis to Start Jury Trials, with Coronavirus Precautions in Place*, STL Today (Jul. 10, 2020), https://www.stltoday.com/news/local/crime-and-courts/federal-court-in-st-louis-to-start-jury-trials-with-coronavirus-precautions-in-place/article_9bfd2974-051c-5a56-97bb-0dc9cb382700.html; and Michael Gordon, *Place Your Hand on the Bible: Federal Jury Trials Resume after Weeks of COVID Planning*, Charlotte Observer (June 13, 2020) (discussing reopening plans for the Western District of North Carolina), https://www.charlotteobserver.com/news/coronavirus/article243514632.html Notably, most courts did suspend operations and jury trials a second time when COVID cases surged in November 2020, but for a limited period of time, and some courts maintained operations with added precautions. *See* Madison Adler, *U.S. Courts Close Doors, Cancel Juries as Virus Surges*, Bloomberg Law (Nov. 20, 2020), https://news.bloomberglaw.com/us-law-week/u-s-courts-close-doors-cancel-juries-as-virus-surges.

[13] Only about two dozen of U.S. District Courts suspended jury trials in their entirety. Other district courts "have safely conducted jury trials during the pandemic, and many of the nation's 94 districts are still scheduling jury trials[.]",
 https://www.uscourts.gov/news/2020/11/20/courts-suspending-jury-trials-covid-19-cases-surge.

Northern District of Alabama explained that "[o]ur court has held nine jury trials and we have had no issues, and no one has gotten sick . . . ." *Id*. "As of September 10 [prior to Mr. Mercado's arraignment in this matter], 30 of the country's 94 federal districts had issued orders allowing jury trials to resume." Janna Adelstein, *Courts Continue to Adapt to Covid-19*, Brennan Center (Sept. 10, 2020), https://www.brennancenter.org/our-work/analysis-opinion/courts-continue-adapt-covid-19. Therefore, had Mr. Mercado been arrested in another district, he would have been allowed to have his speedy and public trial by jury and avoid prolonged pretrial detention with no end in sight. For these reasons and others, he moves this Court for dismissal with prejudice.

### III.  Sixth Amendment

A Sixth Amendment speedy trial claim depends on four factors: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992). "As the Supreme Court noted in *Doggett*, courts have generally found

delays approaching one year to be presumptively prejudicial." *United States v. Ward*, 211 F.3d 356, 361 (7th Cir. 2000) (citing *Doggett*, 505 U.S. at 652 n.1).  A nine month period of delay is within the range of presumptively prejudicial and warrants a court's examination of the *Doggett* factors.  *United States ex rel. Fitzgerald v. Jordan,* 747 F.2d 1120, 1127 (7th Cir.1984) (finding an eight month period presumptively prejudicial).

On the issue of whether pretrial delay was "uncommonly long," this matter is not extended or complex, involves only one defendant and an insular instance of conduct, which will require few witnesses and little time to conduct the trial.  For this type of simple, run-of-the-mill case, the delay was indeed uncommonly long, as trial could have been conducted easily and effectively within two to three months of arraignment.  While the reason for the delay, COVID-19, is a neutral factor, it must necessarily weigh into the analysis and "rest with the government rather than with the defendant."  *United States v. Jackson,* 542 F.3d 403, 407 (7th Cir. 1976) (quoting *Barker v. Wingo,* 407 U.S. 514, 531 (1976)). Defendant asserted his rights and preserved his objection to the exclusion of time in each motion to continue filed during the COVID

closure. His most recent motions to continue should not be weighed against him in the analysis because the government has produced various new items of discovery in anticipation of jury trial that have required defense review and investigation.

Lastly, Mr. Mercado has been detained pretrial, which is a particularly prejudicial circumstance to him because of his mental health conditions. He suffers from PTSD and Generalized Anxiety Disorder with Panic Attacks, and lived for three years with agoraphobia. Conditions of imprisonment, namely being forced to live in close conditions with others—during a global pandemic—therefore, are particularly prejudicial as applied to him. Moreover, pandemic precautions raise significant challenges that will inhibit Mr. Mercado's right to both achieve a fair cross section in the venire and to effectively evaluate juror bias due to mask mandates. These added defects raise significant Due Process concerns and must be included in the prejudice analysis as impeding Mr. Mercado's Sixth Amendment right to a jury trial. He has, therefore, and will further experience, prejudice to his defense and the Indictment against him should be dismissed.

For these reasons and such other reasons as this Honorable Court may deem just and proper after a hearing on this Motion, Mr. Mercado moves for dismissal with prejudice and his immediate release.

    Respectfully submitted,

    RAFAEL MERCADO-BERRIOS,
    Defendant,

    THOMAS PATTON, Federal Public
    Defender

    By:  s/ Rosana E. Brown
    Rosana E. Brown
    Assistant Federal Public Defender
    Office of the Federal Public Defender
    600 East Adams, 3rd Floor
    Springfield, Illinois 62701
    Telephone: (217) 492-5070
    Fax: (217) 492-5077
    E-mail: rosie_brown@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Tanner Jacobs
Assistant United States Attorney
Office of the U.S. Attorney
318 South Sixth Street
Springfield, IL 62701-1806

By: _s/ Rosana E. Brown_
Rosana E. Brown
Assistant Federal Public Defender